IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID and JENNIFER SINGLEY,**<br>**401 College Avenue**<br>**West Chester, PA 19382**<br>                            **Plaintiffs**<br>      v.<br>**RUST-OLEUM CORPORATION,**<br>**11 Hawthorn Parkway**<br>**Vernon Hills, IL 60061**<br><br>**And**<br><br>**HOME DEPOT USA, INC.**<br>**2455 Paces Ferry Road**<br>**Atlanta, GA 30339**<br>                            **Defendants** | **Civil Action No.**<br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby demand judgment against the above-named Defendants and, in support thereof, allege the following:

## PARTIES

1. Plaintiffs, David and Jennifer Singley (hereinafter "Plaintiffs") were, at all times relevant hereto, adult individuals and Pennsylvania citizens who were the owners of the residential property located at 401 College Avenue, West Chester, Pennsylvania 19382 (hereinafter the "subject property").

2. At all times relevant hereto, Defendant, Rust-Oleum Corporation (hereinafter "Rust-Oleum") was, upon information and belief, a Delaware corporation with its primary place

1

of business at the above-captioned address in Illinois, and was authorized to do business within the Commonwealth of Pennsylvania.

3. Upon information and belief, Rust-Oleum is in the business of, *inter alia*, designing, formulating, manufacturing, testing, packaging, labeling, marketing, selling, and/or distributing stains and surface preparation products such as, *inter alia*, Rust-Oleum/Varathane wood stain.

4. Upon further information and belief, Defendant, Rust-Oleum undertakes a significant amount of selling, distributing and/or marketing of finishing oils and wood stains in Pennsylvania.

5. Defendant, Home Depot USA, Inc. ("Home Depot") was, upon information and belief, at all times material hereto, a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, GA 30339, and was authorized to do business within the Commonwealth of Pennsylvania.

6. Home Depot is in the business of, *inter alia*, selling, distributing and/or marketing Consumer products including the wood stains used by Plaintiffs and at issue in this case, which were sold by Home Depot prior to the fire as more fully described below.

**JURISDICTION AND VENUE**

7. Jurisdiction is based on 28 U.S.C §1332(a)(1) as this action involves a controversy between citizens of different states; namely, Plaintiffs being citizens and residents of the Commonwealth of Pennsylvania and Defendants being corporations organized, existing under the laws of the State of Delaware and headquartered within the State of Illinois (Rust-

Oleum) and Georgia (Home Depot) respectively. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves of the benefit of the laws of this jurisdiction by regularly transacting and/or conducting business herein.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of one or more of the events giving rise to the claims occurred, and where substantial property that is the subject of this action is situated; namely, Chester County, Pennsylvania.

## FACTUAL BACKGROUND

10. On or before May 30, 2021, Plaintiffs purchased at a Home Depot store one or more containers of Rust-Oleum/Varathane Wood Stain (hereinafter "the subject stain product"), a product designed, formulated, manufactured, tested, packaged, labeled, marketed, sold and/or distributed, by Defendants.

11. On or about May 30, 2021, Plaintiffs applied the subject stain product at the subject property.

12. The subject stain product was applied in a manner reasonably expected and foreseeable to Rust-Oleum.

13. The subject stain product was used for its intended purpose in a manner reasonably foreseeable to Rust-Oleum.

14. After the work was finished, the application materials containing and/or saturated with the subject product were left at the subject property.

15. On May 30, 2021, a fire erupted at the subject property.

16. The fire resulted in severe damage to the real and personal property of the Plaintiffs.

17. As a result of this fire, Plaintiffs were unable to live at the subject property and were forced to rent other property while repairs were made and their home was restored to pre-fire condition, and Plaintiffs suffered other consequential and incidental damages including clean-up costs, repair, and associated expenses.

18. The fire was directly and proximately caused by the spontaneous combustion of the application materials containing and/or saturated with the subject stain product as further and more fully described below.

19. As a direct and proximate result, Plaintiffs sustained the damages described herein in an amount in excess of $400,000.00.

## COUNT I
## STRICT LIABILITY
### Plaintiffs v. Rust-Oleum and Home Depot

20. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

21. At all relevant times hereto, Defendants were engaged in the business of designing, formulating, manufacturing, distributing, testing, packaging, marketing, labeling and/or selling and placing into the stream of commerce the subject stain product at issue in this case.

22. Plaintiffs were intended users/consumers of the subject stain product that was formulated, manufactured, distributed, tested, packaged, marketed, labeled and/or sold by Defendants.

23. Defendants expected that the subject stain product would reach users and consumers thereof without any material change in its condition or design.

24. The subject stain product that was designed, formulated, manufactured, distributed, tested, packaged, marketed, labeled and/or sold by Defendants reached Plaintiffs without any material change in condition or design.

25. The subject stain product, which was formulated, manufactured, distributed, tested, packaged, marketed, labeled and/or sold and placed into the stream of commerce by Defendants, was not modified, changed, altered or abused by Plaintiffs or other users prior to or during its use.

26. Defendants knew and intended that such product would be used by members of the general public, and knew of the specific uses, purposes and requirements for which the subject stain product would be utilized.

27. The subject stain product as designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold by Defendants was defective and unreasonably dangerous in the following particular aspects:

    (a)    failed to properly and safely eliminate the avoidable danger of self-heating and/or spontaneous combustion;

    (b)    contained the propensity of self-heating and/or spontaneous combustion if materials used in the application of the aforementioned product were not properly disposed of and/or discarded;

    (c)    failed to adequately warn Plaintiffs and other consumers or users that the subject stain product and byproducts thereof were susceptible to self-heating and spontaneous combustion;

    (d)    failed to provide Plaintiffs and other consumers or users of the subject stain product with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts; and/or

    (e)    failed to provide Plaintiffs and other consumers or users of the subject stain product with adequate and conspicuous warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts of the subject stain product.

28. The design, formulation, manufacturing, distribution, testing, packaging, marketing, labeling and/or sale of the subject stain product with the aforementioned defects and/or inadequacies made the subject stain product defective and unreasonably dangerous.

29. The defective and dangerous condition of the subject stain product proximately caused the fire to occur at the subject property, which resulted in the aforementioned damages to Plaintiffs.

30. Therefore, Defendants are strictly liable to Plaintiffs under the applicable case law/statutes of the Commonwealth of Pennsylvania.

31. As a direct and proximate result, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $400,000.00.

32. As a direct and proximate result, Plaintiffs also suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Defendants, individually, jointly, severally and/or otherwise, for damages, in an amount in excess of $400,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT II
## NEGLIGENCE
### Plaintiffs v. Rust-Oleum

33. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

34. Rust-Oleum had a duty to exercise reasonable care in the design, formulation, manufacture, distribution, testing, warning, labeling, packaging and instruction and/or sale of the

subject stain product, including a duty to ensure that the products did not expose users or consumers, such as Plaintiffs, to an unreasonable risk of harm and/or danger and that any unreasonable hazard and/or danger associated with the subject stain product was properly and adequately warned against.

35.	Rust-Oleum owed Plaintiffs and other users or consumers of the subject stain product a duty to act with reasonable care in the design and manufacture of the subject stain product to provide a reasonably safe product and eliminate avoidable dangers, such as the unreasonably dangerous and hazardous propensity for self-heating and/or spontaneous combustion.

36.	Rust-Oleum also owed Plaintiffs and other users and consumers of the subject stain product a duty to provide adequate warnings and/or instruction concerning safe disposal and/or storage of materials exposed to or affected by the subject stain product, including byproducts thereof, produced during ordinary and intended use.

37.	Rust-Oleum breached its duties of care to Plaintiffs and was negligent in:

(a)	designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain product that is unreasonably dangerous and/or hazardous;

(b)	designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain product and failing to eliminate the avoidable danger of self-heating and/or spontaneous combustion;

(c)	failing to conform its conduct in designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain product, when it knew, or should have known, that its products contained the dangerous and hazardous propensity of self-heating and/or spontaneous combustion if materials used in the application of the aforementioned product was not properly disposed of and/or discarded;

(d) failing to offer consumers, such as Plaintiffs, a less-hazardously designed and/or formulated product that would perform comparably to the actual product sold without the inherent damages (including the propensity to self-heat / spontaneously combust);

(e) failing to adequately warn Plaintiffs and other consumers or users that the subject stain product and byproducts thereof were susceptible to self-heating and spontaneous combustion;

(f) failing to provide Plaintiffs and other consumers or users of the subject stain product with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts;

(g) failing to provide, establish, and/or follow proper and adequate controls so as to avoid the problems enumerated in the subparagraphs above;

(h) failing to perform the above measures in conformity with the prevailing and safe industry and governmental specifications and standards;

(i) failing to adequately warn Plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth in the subparagraphs above;

(j) failing to retain, employ, and/or contract with adequate and proper individuals to undertake the measures set forth in the subparagraphs above; and/or

(k) failing to properly train the individuals who were retained, employed or contracted with to undertake the measures set forth in the subparagraphs above.

38. As noted above, Rust-Oleum owed Plaintiffs a number of duties and breached said duties based upon the liability producing conduct noted in paragraph 37.

39. As a direct and proximate result of the negligence and carelessness of Rust-Oleum, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $400,000.00.

40. As a direct and proximate result of the negligence and carelessness of Rust-Oleum, Plaintiffs suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Defendant Rust-Oleum, individually, jointly, severally and/or otherwise, for damages, in an amount in excess of $400,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT III
## BREACH OF IMPLIED WARRANTY
### Plaintiffs v. Rust-Oleum

41. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

42. At the time Rust-Oleum designed, manufactured, formulated, marketed, distributed, labeled and/or sold the subject stain product, Rust-Oleum knew of the use for which the product was intended, and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

43. Contrary to such implied warranties, the subject stain product was not of merchantable quality and fit and safe for its intended use because it was defective in design as Rust-Oleum failed to properly warn users or consumers that the product and its byproducts were susceptible to self-heating and spontaneous combustions.

44. Contrary to such implied warranties, the subject stain product was not of merchantable quality and fit and safe for its intended use because it was defective in design as

Rust-Oleum failed to properly warn users or consumers concerning the safe disposal and/or storage of materials exposed to or affected by the products and byproducts.

45. Contrary to such implied warranties, the subject stain product was not of merchantable quality and fit and safe for its intended use because it contained drying oils that generated the dangerous hazards noted above, and could have been produced without such unnecessary and dangerous hazards.

46. For these reasons, Rust-Oleum breached its implied warranty of merchantability as set out in 13 Pa.C.S.A. §2314 in that the product was not fit for the ordinary uses for which the product was used.

47. Plaintiffs' damages occurred as a direct and proximate result of Rust-Oleum's breaches of its implied warranty of merchantability as set out in 13 Pa.C.S.A. §2314.

48. As a natural and foreseeable consequence of such breaches, the fire occurred at the subject property, which resulted in Plaintiffs' damages.

49. As a direct and proximate result of the aforementioned breaches, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $400,000.00.

50. As a direct and proximate result of the aforementioned breach, Plaintiffs suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

51. Plaintiffs have performed any and all conditions precedent to recover for such breaches.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Defendant Rust-Oleum, individually, jointly, severally and/or otherwise, for damages, in an amount in excess of

$400,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT IV
## NEGLIGENCE
### Plaintiffs v. Home Depot

52. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

53. Home Depot owed a duty of reasonable care to Plaintiffs in regard to, inter alia, the sale, distribution, marketing, inspection, and notification of defects to purchasers of its products, including the subject stain products; and said duty was breached as described herein.

54. Prior to the underlying sale of stain and the subject fire, Home Depot was well aware of the spontaneous combustion characteristics of the stains involved here, as well as similar oil-based stains produced by Rust-Oleum and other manufacturers, all of which Home Depot sold to customers.

55. Prior to the underlying sale of stain and the subject fire, Home Depot was well aware of the elevated numbers of spontaneous combustion fires resulting from the stains involved here, as well as from similar oil-based stains produced by Rust-Oleum and other manufacturers, all of which Home Depot sold to customers.

56. Prior to the underlying sale of stain and the subject fire, Home Depot was well-aware of the inadequate and unsafe warnings provided on the labels of the stains involved here, as well as on the labels of similar oil-based stains produced by Rust-Oleum and other manufacturers that Home Depot sold to customers.

57. Prior to the underlying sale of stain and the subject fire, innumerous fire incidents and claims had been brought to the attention of Home Depot and/or asserted against Home Depot for fires resulting from the spontaneous combustion of materials containing the stains involved here, or similar oil-based stains produced by Rust-Oleum and other manufacturers, and which Home Depot had sold to customers.

58. Home Depot was aware of such fires, and such liability claims and lawsuits arising from such fires, and that such fires had occurred despite the warnings on the labels, and/or as a result of such inadequate warnings on the labels.

59. The aforementioned damages were the direct and proximate result of the negligence, carelessness, and/or other unlawful conduct of Home Depot, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

   (a) failing to exercise reasonable care in the following manner:

      i. failing to market, sell, deliver and distribute a safe, non-defective product;
      ii. failing to properly inspect, manufacture, distribute and/or test the products;
      iii. failing to properly determine whether the products were in compliance with applicable safety standards;
      iv. marketing, distributing, delivering and/or selling the products when Home Depot knew or should have known that the products would be unsafe for the reasons for which purchased;
      v. failing to provide in-store supplemental and proper warnings to customers as to the risks and hazards of using the stains involved here, and/or similar oil-based stains produced by Rust-Oleum and other manufacturers;
      vi. failing to provide website supplemental and proper warnings to customers as to the risks and hazards of using the stains involved here, and/or similar oil-based stains produced by Rust-Oleum and other manufacturers;

      vii.    failing to provide in-store supplemental and proper use and/or disposal instructions to customers so that they could avoid the risks and hazards of using the stains involved here, and/or similar oil-based stains produced by Rust-Oleum and other manufacturers; and/or

      viii.    failing to provide website supplemental and proper use and/or disposal instructions to customers so that they could avoid the risks and hazards of using the stains involved here, and/or similar oil-based stains produced by Rust-Oleum and other manufacturers.

(b) failing to adequately instruct and supervise its employees, agents, technicians, vendors, subcontractors, and/or servants so as to avoid the problems set forth above;

(c) failing to adequately warn Plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth above;

(d) failing to provide, establish, and/or follow proper and adequate controls so as to avoid the problems enumerated in the subparagraphs above;

(e) failing to perform the services above in conformity with the prevailing industry and governmental specifications and standards; and/or

(f) failing to comply with applicable rules, regulations, codes, industry standards, statutes and/or ordinances including, but not limited to, those of the Commonwealth of Pennsylvania.

60. Home Depot owed Plaintiffs a number of duties and breached said duties.

61. As a direct and proximate result of the negligence and carelessness of Home Depot, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $400,000.00.

62. As a direct and proximate result of the negligence and carelessness of Home Depot, Plaintiffs suffered inconvenience, discomfort and the loss of the use and enjoyment of their property.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Defendant Home Depot USA, Inc., individually, jointly, severally and/or otherwise, for damages, in an amount in excess of $400,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT V
## BREACH OF WARRANTIES
### Plaintiffs v. Home Depot

63. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

64. In conjunction with the sale and distribution of the product, Home Depot expressly and implicitly warranted that it would be free from defects, of merchantable quality and safe to use for its general and intended purposes.

65. In light of the defects alleged in the preceding counts, Home Depot did not provide a product of merchantable quality, reasonably fit for the purposes (general and specific) for which intended, thus breaching warranties that Plaintiffs had rights to, and did, rely upon.

66. As a direct and proximate result of such breach(es), Plaintiffs sustained and incurred damage to their real and personal property, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses.

67. The products were used in a foreseeable and ordinary manner and yet caused the damages described herein when the fire arose due to the defects and hazards therein.

68. Plaintiffs had and have performed all conditions precedent to recover based upon such breaches.

69. As a direct and proximate result of the breach of express and implied warranties, Plaintiffs sustained and incurred damage to their real and personal property, as well as, an imposition of additional related expenses and hardship besides.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against Defendant Home Depot USA, Inc., individually, jointly, severally and/or otherwise, for damages, in an amount in excess of $400,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by right to jury.

Respectfully Submitted,

**de LUCA LEVINE LLC**

**Dated:** 10/20/2022          **BY:** _____
Kenneth T. Levine, Esq. (PA I.D. No. 60984)
Matthew Connolly, Esq. (PA I.D. No. 201746)
301 East Germantown Pike, 3rd Floor
East Norriton, PA 19401
Phone:  (215) 383-0081
Fax:  (215) 383-0082
E-mail:        klevine@delucalevine.com
               mconnolly@delucalevine.com

*Attorneys for Plaintiffs*